IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DURRELL ANTHONY PUCKETT,  No. 2:16-cv-0726-CMK

    Plaintiff,

  vs.  ORDER

CHAD SEELY, et al.

    Defendant.

                             /

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and no other party has been served or appeared in the action. Pending before the court is plaintiff's complaint (Doc. 1).

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement

1

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

### I. PLAINTIFF'S ALLEGATIONS

In his complaint, plaintiff makes several allegations against a number of defendants. In his first claim, plaintiff alleges he was brutalized by several defendants while he was handcuffed and in leg restraints. He alleges defendants Dragash, Hendricks, Mohr, Seely and Sparks each participated in the attack to varying degrees. He further alleges defendants Hyman, Van, Calahan, Sparks, Givens, Lee and Ogbeide were all present during the attack, witnessed the attack, and failed to help plaintiff. Finally, he alleges defendant Kobba refused to provide him a full body screening to document his injuries.

In his second claim, plaintiff alleges he was denied due process by defendants Macomber, Quinn, Forsterer, Hendricks, Dragash, Porter, Compton, Burnett, and Eldridge. It is unclear exactly how plaintiff purports to have been denied due process, but it appears plaintiff was offered a lower reimbursement amount for damage to a book than he thought was fair. Plaintiff apparently did not accept the amount offered, and the defendants attempted to force him to accept the lowered amount. It further appears that plaintiff is claiming the defendants falsified documents during the 602 appeals process.

/ / /

/ / /

In his third claim, plaintiff alleges retaliation by defendants Dragash, Hendricks, Porter, Compton, Burnett, and Quinn. Again, this claim is unclear, but it appears to be related to the reimbursement and 602 inmate grievance mentioned above. Plaintiff alleges the defendants destroyed evidence, acted with disregard to his 602 grievance, and that defendant Dragash threatened reprisal just before the above mentioned attack.

Finally, in his fourth claim, plaintiff alleges denial of equal protection and racial profiling. This claim is similarly unclear, but appears to relate to verbal harassment by defendants Dragash, Seely, Van, and Mohr, who allegedly used racial epithets toward plaintiff.

## II. DISCUSSION

The complaint appears to state a cognizable claim for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b) against some of the defendants for some of the claims. However, as discussed below, the complaint fails to state a claim against all of the defendants for all of the claims. The complaint appears to state an Eighth Amendment claim against defendants Dragash, Hendricks, Mohr, Seely and Sparks for their participation in the physical altercation, and against defendants Hyman, Van, Calahan, Sparks, Givens, Lee and Ogbeide for failure to protect plaintiff from the physical abuse. If the allegations are proven, plaintiff has a reasonable opportunity to prevail on the merits of this action. The court, therefore, finds that service is appropriate and will direct service by the U.S. Marshal without pre-payment of costs. Plaintiff is informed, however, that this action cannot proceed further until plaintiff complies with this order, as set out below. Plaintiff is warned that failure to comply with this order may result in dismissal of the action. See Local Rule 110.

To the extent plaintiff claims defendants Macomber, Quinn, Forsterer, Hendricks, Dragash, Porter, Compton, Burnett, and Eldridge violated his due process rights, such an allegation fails to state a cognizable claim for which relief could be granted. Similarly, his claim for retaliation against defendants Dragash, Hendricks, Porter, Compton, Burnett, and Quinn, his claim regarding the verbal harassment against defendants Dragash, Seely, Van, and Mohr, and

his Eighth Amendment claim against defendant Kobba, are all insufficient to state a cognizable claim.

### Eighth Amendment

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

To the extent plaintiff alleges defendant Kobba violated his Eighth Amendment rights for denial of medical attention, he fails to allege he was denied medical care. Rather, he alleges defendant Kobba refused to document his injuries for litigation purposes. While nurse Kobba may have had an obligation to assist plaintiff with his injures, the undersigned sees no connection between documenting his injuries for litigation purposes and denying him medical care. Thus, the undersigned sees no plausible claim for violation of the Eighth Amendment against defendant Kobba.

/ / / /

/ / / /

Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id.

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the

6

deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is not barred, however, where the deprivation is foreseeable and the state can therefore be reasonably expected to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See id. at 128-29.

It is unclear what due process rights plaintiff alleges were violated. It appears that plaintiff is unhappy with the property damage and reimbursement amount offered as well as the 602 grievance process. To the extent plaintiff alleges his due process rights were violated, the undersigned finds plaintiff fails to allege any property interest in a book that was somehow damaged. At best, it appears this was a random act of a prison official, which would be subject to the state's post-deprivation remedy.

///

On the other hand, if the claim is related to plaintiff being unhappy with the grievance process, there is no basis for such a claim. Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment. However, there is nothing in the instant case which would implicate the First Amendment. Rather, the claim relates to property damage.

### Retaliation

Similarly, plaintiff's claims of retaliation are insufficient. In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must

demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

    While plaintiff alleges issues with the inmate grievance process, he fails to allege that he was engaged in any protected conduct for which adverse action was taken against him. Again, the claim relates to being offered a low reimbursement amount for a damaged book. Plaintiff appears to be alleging that the attack was in response to him rejecting the reimbursement offer. However, that is not a basis for a retaliation claim.

    Equal Protection/Harassment

    Finally, while plaintiff labels his last claim violation of equal protection and racial profiling, the allegations relate to verbal harassment. Nothing in the complaint would suffice as a basis for equal protection violation.

    Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio,

125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Here, plaintiff alleges the defendants used racial epithets toward him, but there are no allegations that the defendants actually discriminated against him or treated him differently based on his race. Rather, as stated above, the claim appears to be more of a challenge to verbal harassment.

The standards for an Eighth Amendment violation are set forth above. The same standard applies here to the extent plaintiff is attempting to allege the verbal harassment he was subjected to was a violation of the Eighth Amendment. However, allegations of verbal harassment do not state a claim under the Eighth Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner] psychological damage." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th

Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998). In addition, the prisoner must show that the verbal comments were unusually gross, even for a prison setting, and that he was in fact psychologically damaged as a result of the comments. See Keenan, 83 F.3d at 1092.

While the use of racial epithets is offensive, without more such verbal harassment is insufficient to state a claim for violation of the Eighth Amendment.

### III. CONCLUSION

Plaintiff's complaint is sufficient to state a claim for violation of his Eighth Amendment rights for excessive use of force and failure to protect. However, it is insufficient to state a claim for retaliation, due process, equal protection, or harassment. As such, service will be authorized for the defendants involved in the use of force and failure to protect. As to the other claims, plaintiff will be required to show cause in writing, within 30 days of the date of this order, why the claims for retaliation, due process, equal protection, or harassment, as well as defendants Macomber, Quinn, Forsterer, Porter, Compton, Burnett, and Eldridge, from this action for failure to state a claim.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff shall show cause in writing, within 30 days of the date of this order, why his claims for retaliation, due process, equal protection, or harassment, as well as defendants Macomber, Quinn, Forsterer, Porter, Compton, Burnett, and Eldridge, should not be dismissed from this action for failure to state a claim;

2. The court authorizes service on the following defendant(s): Dragash, Hendricks, Mohr, Seely, Sparks, Hyman, Van, Calahan, Givens, Lee and Ogbeide ;

3. The Clerk of the Court shall send plaintiff one USM-285 form for each defendant identified above, one summons, an instruction sheet, and a copy of the complaint; and

4. Within 30 days of the date of service of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit the following documents to the court:

|  |  |  |
|---|---|---|
| a. | The completed Notice of Submission of Documents; |
| b. | One completed summons; |
| c. | Eleven completed USM-285 form(s); and |
| d. | Twelve copies of the endorsed complaint. |

DATED: April 27, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

12

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

DURRELL ANTHONY PUCKETT,  No. 2:16-cv-0726-CMK

    Plaintiff,

   vs.

CHAD SEELY, et al.

    Defendant.

_____/

## NOTICE OF SUBMISSION OF DOCUMENTS

Plaintiff hereby submits the following documents in compliance with the court's order:

    __1__    completed summons form;

    ____    completed USM-285 form(s); and

    ____    copies of the complaint.

DATED: _____                      _____
                                                            Plaintiff